SO ORDERED.

SIGNED this 22 day of November, 2016.

_____
Joseph N. Callaway
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| DREW TRANSPORTATION SERVICES, INC. | 16-02609-5-JNC |
| DEBTOR | |

### ORDER ALLOWING MOTION FOR REFUND

The matter before the court is the Motion for Refund filed by T&C Transportation Services, LLC ("T&C") on October 10, 2016, Dkt. 166 (the "Refund Motion"). A Response in Opposition was filed by the chapter 11 trustee, Walter Hinson, Esq., (the "Trustee") on October 26, 2016, Dkt. 192. A hearing on the matter was conducted in Raleigh, North Carolina on November 8, 2016, after which the court took the matters under advisement. After a review of the record, the evidence presented, and arguments of counsel at the hearing, the matter is ready for determination.

### BACKGROUND

Drew Transportation Services, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 16, 2016. The Debtor provided a variety of transportation services, maintained a fleet of nearly seventy vehicles, and primarily served four

clients, the Wake County Public School System ("WCPSS"), Wake County Human Services[1], United Airlines, Inc., and Volunteers for America. On June 27, 2016, the court appointed the Trustee for cause pursuant to 11 U.S.C. § 1104, Dkts. 68, 69. Following his appointment, the Trustee employed a financial consultant, Dkt. 79, obtained limited post-petition financing for the Debtor, Dkt. 111, and continued operations in hopes of selling the Debtor business and assets as part of a going concern.

**The Sale**

On August 28, 2016, the Trustee filed a Motion for Proposed Private Sale, Dkt. 135 (the "Sale Motion"), which was heard expedited notice on August 29, 2016 (the "Sale Hearing") pursuant to an order entered on August 26, 2016, Dkt. 133. The Sale Motion included the proposed Asset Sale Agreement (the "ASA") between the parties.

With limited enumerated exceptions, the ASA provided for the sale of "substantially all the assets" of the Debtor to T&C, which were more specifically classified into three categories: vehicles, existing contracts, and personal property. The seven existing contracts to be assigned to T&C were named and detailed in an incorporated attachment to the ASA, including a "Contract to Provide Community Transportation Services for Wake County, North Carolina . . . by and between Wake County and Drew Transportation Services, Inc., dated June, 2016" (the "TRACS Contract").

As the parties confirmed in testimony rendered at the Sale Hearing, because the contracts constituted one of the primary assets being purchased, the ASA included language that would allow T&C to seek a partial refund of the total purchase price if a third party chose not to assign its contract through no fault of T&C. Specifically, the pertinent section of the ASA provides as follows:

---

[1]More specifically, the Debtor served Wake County Human Services through a program entitled Transportation and Rural Access, which is known as "TRACS."

2

> If any of the Contracts are canceled or not transferred to [T&C] within thirty days of the execution of the Contract, then the allocated price will be reduced as follows, unless the contractor withdraws a Contract due to a specific action of [T&C], then the reduction in price shall not be awarded to [T&C] . . . Wake County (also referred to as "TRACS") ($20,000) . . . [s]hould a contractor not agree to the transfer, his specific reasoning will be the determination will dictate [sic] whether the price is reduced or not.

Dkt. 135, Ex. A at 2 (the "Refund Provision").

At the Sale Hearing, the Trustee explained the underlying urgency surrounding the sale, as WCPSS was threatening to terminate its contract with the Debtor if later model vehicles that satisfied its contractual requirements were not put into service by the Debtor within a short period of time. The Debtor could not afford to purchase new vehicles as required by WCPSS, so the Trustee sought out a potential buyer who could do so. In addition, the Debtor appeared to be low on operating cash, literally operating from collected receivable to collected receivable. Thus, the WCPSS contract was of critical importance to the Debtor as a source of income, and without it, the Trustee believed that the Debtor would be forced to cease operations entirely and would lose any ongoing concern value for a future sale.

John T. Bass, who served as a financial consultant for the Debtor, testified that the TRACS Contract had been temporarily suspended by Wake County Human Services due to the Debtor's failure to file appropriate paperwork. Consequently, as of August 29, the Debtor was no longer providing services under the TRACS Contract. Mr. Bass maintained that the TRACS Contract was "potentially the most lucrative" for the Debtor and was hopeful that services would resume upon the filing of the required paperwork and assurance of other improved contract compliance. At the August 29 Sale Hearing, however, it became evident that the initial draft of the ASA was not sufficiently detailed regarding the specific vehicles and personal property to be included in the sale and that further work was needed to reach final mutual agreement. As a result, the court continued

3

the Sale Motion for one week to September 6, 2016, during which time the substantive terms of the ASA remained unchanged and the details on which assets would be excepted from the sale and transfer were finalized.

At the September 6 hearing, both the Trustee and counsel for T&C stressed the urgency of consummation of the sale by September 9, 2016. The court expressed concern regarding the potential failure of third parties to agree to transfer their existing contracts with the Debtor to T&C following execution of the ASA (and the resulting obligation to refund a portion of the purchase price), noting that it lacked authority to require third parties to assign their respective contracts. Additionally, the court reminded T&C that it was to exercise good faith in attempting to secure the transfer of the contemplated contracts.

The court approved the ASA and entered an order granting the Sale Motion on September 8, 2016, Dkt. 148. The final ASA, which was executed on September 7, 2016, was not materially different from the original one proposed and included identical language for the Refund Provision. In the order approving the Sale Motion, the court specified that "any efforts to obtain a refund under the terms of the agreement will require court approval as to the substance of the reasoning and the amount of the refund." As explained at the September 6 hearing, this provision was designed to protect all parties and to ensure that T&C employed its best business efforts in seeking transfer of the contracts.

**The Termination Letter**

In a letter dated September 19, 2016, Wake County Human Services gave notice of termination of the TRACS Contract to the Trustee, Mr. Bass, and Christopher Brown, the Chief Operating Officer and Chief Financial Officer of T&C, who served as T&C's representative during the negotiations of the ASA. Dkt. 167, Ex. A (the "Termination Letter"). The Termination Letter

4

explains that the "contract is being terminated on good terms" and that the effective date of termination is November 19, 2016. Mr. Brown did not receive the Termination Letter in the mail and instead learned of Wake County's decision to terminate the TRACS Contract in an email dated October 7, 2016. Dkt. 167, Ex. B. The email reiterated Wake County's position and specifically states that "this cancellation is not based upon the performance of [the Debtor] or [T&C]." T&C filed its Refund Motion immediately thereafter, seeking a refund of the $20,000 designated for the TRACS Contract under the Refund Provision. The Trustee objected and the Refund Motion was set for hearing on November 8, 2016.

**The November 8, 2016 Hearing**

At the November 8, 2016 hearing, Mr. Brown, as the principal of T&C, testified that the TRACS Contract was never formally transferred to T&C via a written agreement, despite his good faith efforts to effectuate an assignment.[2] He explained that at the time of the ASA's execution, he was informed and believed the suspension of the TRACS Contract was a temporary result of the chapter 11 proceedings, and that Wake County required time to process paperwork and draft documentation to accomplish the transfer to T&C. He explained that following a series of emails and phone calls, he thought that Wake County would eventually assign the contract and T&C "would get TRACS back." Instead, the TRACS Contract transfer never occurred, and Mr. Brown learned of Wake County's final decision to terminate the TRACS Contract in its entirety on October 7, 2016. As a result of the suspension and lack of transfer, T&C never provided services post-closing to Wake County Human Services and never performed under the TRACS Contract. T&C did not buy receivables from the Debtor under the ASA and generated no receivables under the TRACS Contract following its purchase of the Debtor's assets.

---

[2] Mr. Brown testified that all other contracts purchased from the Debtor were formally transferred to T&C.

5

The Trustee argued that Mr. Brown and T&C knew about and accepted the risk of a third party refusing to assign its contract during negotiations of the ASA.[3] He further maintained that the ASA provided for a refund only if a contract was cancelled within the thirty-day window following execution of the ASA, and that because the effective date of cancellation was November 19, 2016, no basis for a refund existed. Finally, the Trustee contended that that the failure of Wake County Human Services to assign the TRACS Contract was not based upon the performance of the Debtor.

T&C argued that the terms of the ASA as written are straightforward. It asserted that Wake County Human Services failed to transfer the TRACS Contract in writing and canceled the TRACS Contract on September 19, 2016, well within thirty days from September 7, 2016. T&C was never allowed to perform services for Wake County and the cancellation was made due to actions (or non-actions) of the Debtor related to its contract with TRACS prior to the ASA closing. Consequently, T&C argued that the conditions triggering a refund under the sale contract approved by the court were satisfied, and it is therefore entitled to recover the designated portion of the purchase price.

## DISCUSSION

The sole issue is whether T&C is entitled to a refund of $20,000 pursuant to the Refund Provision of the ASA. Under North Carolina law, the court must first determine "whether or not the language of a contract is ambiguous or unambiguous . . . ." *Piedmont Bank & Trust Co. v. Stevenson*, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52 (1986). The ASA provides that "[i]f any of the Contracts are canceled or not transferred to [T&C] within thirty days of the execution of the

---

[3] Of course, understanding the risk of non-assignment is precisely the reason a party would negotiate for the inclusion of a refund provision in a sale agreement.

Contract, then the allocated price will be reduced . . . ." This language in this relevant portion of the contract appears clear and unambiguous on its face, and neither party argued to the contrary.

Next, when a contract is unambiguous, a court must interpret the contract as written as a matter of law. *See, e.g.*, *Am. Nat. Elec. Corp. v. Poythress Commercial Contractors, Inc.*, 167 N.C. App. 97, 604 S.E.2d 315 (2004) (citing *Johnston County v. R.N. Rouse & Co., Inc.*, 331 N.C. 88, 414 S.E.2d 30 (1992)). As a result, in interpreting an unambiguous contract, extrinsic evidence should not be considered. *See Williams v. Habul*, 219 N.C. App. 281, 724 S.E.2d 104 (2012) (citations omitted). Instead, the language of the document governs. *Id*.

Looking at the plain language, the Refund Provision provides that upon the satisfaction of a condition – here, a third party's decision to cancel *or* not transfer a contract within thirty days of the ASA's execution – T&C is entitled to a refund of a specific amount. Wake County Human Services both canceled *and* failed to transfer the TRACS Contract within thirty days of the execution of the ASA, thus doubly satisfying the condition upon which a refund would be due unless the decision was based on a specific action by T&C.[4]

The Refund Provision and Sale Order also state that the court is to consider a contractor's reasoning for not agreeing to a transfer in determining whether to allow a refund. Here, Wake County gave no specific reason or explanation for its decision not to transfer the TRACS Contract and did not identify any specific action or conduct by T&C that influenced its decision. There is no evidence that any action taken by T&C led to the decision to cancel the contract. To the contrary, it appears that T&C exercised its genuine and best business efforts to retain the TRACS Contract and effectuate the transfer, as Mr. Brown repeatedly requested telephone calls and meetings with Wake County to discuss operations going forward. Further, despite the line of

---

[4] In other words, even if the contract was cancelled after the 30-day period, it was also not transferred during that period and thus the condition was met.

questioning from the Trustee seeking to establish that the contract was not canceled as a result of any actions of the Debtor, the Refund Provision does not speak to fault of the Debtor, but only denies the right to a refund if the termination or failure to assign is due to the actions of T&C.

In short, no evidence of wrongdoing, meddling, or bad faith by T&C regarding the TRACS Contract was presented by the Trustee, and Mr. Brown's testimony makes it abundantly clear that he took appropriate and reasonable steps to have T&C assume the TRACS Contract. Wake County Human Services, for reasons known to it, exercised its independent judgment and legal right under its separate contract with the Debtor to terminate that agreement upon sixty days' notice. This is the factual scenario contemplated by the Refund Provision in the ASA. T&C is therefore covered by the Jagger and Richards lyrical forecast of "You can't always get what you want, but if you try sometimes, you just might find, you get what you need." The court finds that T&C is entitled to a refund in the amount of $20,000.00.

## CONCLUSION

Based on the foregoing, the court finds that T&C is entitled to a refund of $20,000.00 due to timely cancelation of the TRACS Contract based on matters other than actions or inaction of T&C. The Refund Motion is therefore ALLOWED. The Trustee is directed to pay the sum of $20,000.00 by check to T&C Transportation Services, LLC upon this order becoming final and effective.

**END OF DOCUMENT**